## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES DETHROW, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>     Defendant. | Case No. 3:21-cv-1723<br><br><br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff, James Dethrow ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against The Procter & Gamble Company ("Defendant"). Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief.

### INTRODUCTION

1.     This case is a class action lawsuit by Plaintiff, and all others similarly situated, who purchased certain aerosol antiperspirant sprays manufactured, sold, and distributed by Defendant. Defendant distributes, markets, and sells several over-the-counter aerosol antiperspirant products sold under the brand names "Old Spice" and "Secret" (the "Aerosol Antiperspirant Products"). Several of Defendant's Aerosol Antiperspirant Products sold under these brand names have been independently tested and shown to be adulterated with benzene, a known human carcinogen.

2.     The presence of benzene in Defendant's Aerosol Antiperspirant Products was not disclosed in the products' label, in violation of state and federal law. Plaintiff and the putative class suffered economic damages due to Defendant's misconduct (as set forth below), and they seek

injunctive relief and restitution for the full purchase price of the Aerosol Antiperspirant Products they purchased.

## **THE PARTIES**

3.      Plaintiff James Dethrow at all times relevant hereto has been a resident of Randolph County, Illinois. On multiple occasions throughout the last several years, Plaintiff purchased Old Spice Antiperspirant/Deodorant Powder Fresh Aerosol Spray from various retailers in Illinois. He paid several dollars for each of the Aerosol Antiperspirant Products. During that time, based on the false and misleading claims and omissions by Defendant, Plaintiff was unaware that Defendant's Aerosol Antiperspirant Products may be adulterated with benzene. Dethrow purchased the Defendant's Aerosol Antiperspirant Products on the assumption that the labeling of Defendant's Aerosol Antiperspirant Products was accurate and that the products were unadulterated, safe, and effective. Dethrow would not have purchased Defendant's Aerosol Antiperspirant Products had he known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff suffered injury in fact when he spent money to purchase products he would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

4.      Defendant The Procter & Gamble Company is an Ohio corporation with its principal place of business at 1 P&G Plaza, Cincinnati, OH 45202. As one of the world's leading brands of skin care, hair care, and cosmetics, Defendant distributes its products, including the Aerosol Antiperspirant Products, throughout the United States. Defendant's line of Aerosol Antiperspirant Products, including the adulterated antiperspirant purchased by Plaintiff and members of the putative class, are available at retail stores throughout Illinois and the United States.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and Plaintiff is a citizen of a state different from Defendant.

6.      This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant is authorized to conduct and do business in Illinois. Defendant has marketed, promoted, distributed, and sold the Aerosol Antiperspirant Products in Illinois and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through promotion, sales, distribution, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided in this judicial district. Venue is also proper because Defendant transacts substantial business in this District.

## FACTUAL ALLEGATIONS

8.      Defendant manufactures, markets, advertises, labels, distributes, and sells a variety of Aerosol Antiperspirant Products, including aerosol antiperspirants sold under the brand names Old Spice and Secret.

9.      In 2021, Valisure LLC ("Valisure"), an analytical pharmacy, performed tests on a variety of Defendant's Aerosol Antiperspirant Products. Specifically, Valisure tested numerous lots of Defendant's Old Spice and Secret Aerosol Antiperspirant Products. Through its testing, Valisure discovered that all the tested Aerosol Antiperspirant Products sold under the name brand

Secret contain benzene, with values ranging from 0.10 ppm to 2 ppm, and some more than 2 ppm up to 16.2 ppm. Through its testing, Valisure also discovered that many of the tested Aerosol Antiperspirant Products sold under the name brand Old Spice contain benzene, with values ranging from less than .1 ppm, 0.10 ppm to 2 ppm, and some more than 2 ppm up to 17.7 ppm.

10.     For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route.[1]

11.     Notably, benzene is not listed as an active or inactive ingredient on any of the labels of the Defendant's Aerosol Antiperspirant Products. Moreover, all the Aerosol Antiperspirant Products are marketed and advertised in an identical manner—as "Antiperspirant."

12.     On November 4, 2021, Valisure filed a citizen petition with the Food and Drug Administration ("FDA"), asking the agency to recall all batches of Defendant's Aerosol Antiperspirant Products tested that (as tested) contained 0.1 ppm or more of benzene, on the basis that they are adulterated under Section 501 of the FDCA (21 U.S.C. § 351) and misbranded under Section 502 of the FDCA (21 U.S.C. § 352).

13.     Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years. According to the National Toxicology Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of

---

[1] Centers for Disease Control and Prevention. *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).

carcinogenicity from studies in humans."[2] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[3] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence .… The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[4]

14.     Likewise, the FDA recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[5] and classifies benzene as a "Class 1" solvent that should be "avoided."[6] The FDA's Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[7]

15.     The FDA regulates antiperspirants to ensure they meet safety and effectiveness standards.[9] The FDA regulates antiperspirants, including the Aerosol Antiperspirant Products at issue here, as over-the-counter ("OTC") drugs rather than as cosmetics. The FDA defines

---

[2] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis added).
[3] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017:Lyon, France), at p. 33.
[4] *Id*. at 34.
[5] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks- and-other-beverages#q1.
[6] https://www.fda.gov/media/71737/download.
[7] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at https://www.fda.gov/media/71736/download.

Antiperspirant as a "drug product applied topically that reduces the production of perspiration (sweat) at that site."[8] As an FDA-regulated product, antiperspirants must pass certain tests before they are sold.

16.    Under the FDA regulations governing Defendant's Aerosol Antiperspirant Products, titled "Antiperspirant Drug Products for Over-the-Counter Human Use," there are certain acceptable active ingredients in products that are labeled as Antiperspirant.[9] Benzene, a known human carcinogen, is not on the FDA's list of acceptable active or inactive ingredients for Aerosol Antiperspirant Products. Nor is benzene identified as an active or inactive ingredient on any of Defendant's Aerosol Antiperspirant Products. Nevertheless, Defendant proclaims in its advertising that benzene is one of the materials "we do not use as ingredients in any of our formulated products,"[10] which is a false and misleading statement.

17.    The governing regulations provide: "An over-the-counter antiperspirant drug product in a form suitable for topical administration is generally recognized as safe and effective and is not misbranded if it meets each condition in this part and each general condition established in § 330.1 of this chapter."[11] Defendant failed to meet this standard as further described herein.

18.    The manufacture of any misbranded or adulterated drug is prohibited under federal law[12] and Illinois state law.

19.    The introduction into commerce of any misbranded or adulterated drug is similarly prohibited.[13]

20.    The receipt in interstate commerce of any adulterated or misbranded drug is also

---

[8] 21 C.F.R. § 350.3.
[9] 21 C.F.R. § 350.10.
[10] https://us.pg.com/ingredients/
[11] 21 C.F.R. § 350.1.
[12] 21 U.S.C § 331(g).
[13] 21 U.S.C. §331(a).

unlawful.[14]

21.    Among the ways a drug may be adulterated are:

If it consists in whole or in part of any filthy, putrid, or decomposed substance; or . . . whereby it may have been rendered injurious to health;[15]

A drug is misbranded:

(a) "If its labeling is false or misleading in any particular."[16]

(b) If the labeling does not contain, among other things, "the proportion of each active ingredient[.]"[17]

(d) "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[18]

22.    If a manufacturer labels a drug but omits ingredients, that renders the drug misbranded.[19]

23.    Defendant did not disclose that benzene, a known human carcinogen, may be present in the Aerosol Antiperspirant Products purchased by Plaintiff and the putative class members. As a result, its Aerosol Antiperspirant Products are adulterated and misbranded. There is "no safe level of benzene" exposure, so it is unsuitable for human application as an ingredient in any antiperspirant.[20]

---

[14] 21 U.S.C. §331(c).
[15] 21 U.S.C. §351(a)(2)(B).
[16] 21 U.S.C. §352(a)(1).
[17] 21 U.S.C. §352(e)(1)(A)(ii).
[18] 21 U.S.C. §352(j).
[19] 21 C.F.R. §§201.6. "The labeling of a drug may be misleading by reason (among other reasons) of: … (2) Failure to reveal the proportion of, or other fact with respect to, an ingredient present in such drug, when such proportion or other fact is material in the light of the representation that such ingredient is present in such drug." 21 C.F.R. §201.10(2).
[20] https://www.who.int/ipcs/features/benzene.pdf.

24.     Defendant wrongfully advertised and sold the Aerosol Antiperspirant Products without any labeling to indicate to consumers that these products may contain benzene. The following image shows an example:





9

25.     Additionally, Defendant maintains a "smartlabel.pg.com" webpage identifying the active and inactive ingredients in its products, and benzene is not listed as an ingredient in any of its Aerosol Antiperspirant Products.[21] In fact, Defendant specifically promises to consumers that benzene is one of the materials "we do not use as ingredients in any of our formulated products."[22]



26.     Plaintiff has standing to represent members of the putative class because there is sufficient similarity between the specific Aerosol Antiperspirant Products purchased by the Plaintiff and the other Aerosol Antiperspirant Products not purchased by Plaintiff. Specifically, each and every one of Defendant's Aerosol Antiperspirant Products (i) are marketed in substantially the same way – as "Antiperspirant"— and (ii) fail to include labeling indicating to

---

[21]https://smartlabel.pg.com/00037000730347.html;https://smartlabel.pg.com/00037000711087.html
[22] https://us.pg.com/ingredients/

consumers that the Aerosol Antiperspirant Products may contain benzene as an active or inactive ingredient. Accordingly, the misleading effect of each Aerosol Antiperspirant Product is substantially the same.

27.     Plaintiff references federal law in this Complaint not in any attempt to enforce it, but to demonstrate that his state-law tort claims do not impose any additional obligations on Defendant, beyond what was already required of it under federal law.

28.     Prior to filing this action, Defendant was sent a pre-suit notice letter advising Defendant of its violations and of Plaintiff's claims and demanding full restitution.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action on behalf of himself and all other similarly situated class members (the "Class") pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class and subclass against Defendant for violations of Illinois state laws and/or similar laws in other states:

### Nationwide Class

All consumers who purchased any Aerosol Antiperspirant Product sold under the name brand Secret and/or Old Spice in the United States of America and its territories from November 4, 2017 to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Defendant's Aerosol Antiperspirant Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

### Illinois-Only Subclass

All consumers who purchased any Aerosol Antiperspirant Product sold under the name brand Secret and/or Old Spice in the State of Illinois from November 4, 2017 to the present for personal use or

consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Defendant's Aerosol Antiperspirant Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

30.    The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of Defendant's Aerosol Antiperspirant Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

31.    Plaintiff's claims are typical of those of all Class members because members of the Class are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims that accompanied Defendant's Aerosol Antiperspirant Products sold under the name brands Secret and Old Spice. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

32.    Plaintiff's claims raise questions of law and fact common to all members of the Class, and these predominate over any questions affecting only individual Class members. The claims of Plaintiff and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

(a)    whether Defendant's Aerosol Antiperspirant Products contained benzene;

(b)    whether Defendant's omissions are true, or are misleading, or objectively likely to deceive a reasonable consumer;

(c)    whether the alleged conduct constitutes violations of the laws asserted;

(d)    whether Defendant's alleged conduct violates public policy;

(e)    whether Defendant engaged in false or misleading advertising;

(f)    whether Defendant was unjustly enriched as a result of its labeling, marketing, advertising and/or selling of the Aerosol Antiperspirant Products;

(g)    whether Plaintiff and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

(h)    whether an injunction is necessary to prevent Defendant from continuing to market and sell defective and adulterated Aerosol Antiperspirant Products that contain benzene, a known human carcinogen.

33.    Plaintiff and his counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the Class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

34.    A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members'

claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

35.    The Class also may be certified because Defendant has acted or refused to acton grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

36.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described above, such as continuing to market and sell Aerosol Antiperspirant Products that may be adulterated with benzene, and requiring Defendant to provide a full refund of the purchase price of the Aerosol Antiperspirant Products to Plaintiff and Class members.

37.    Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

**COUNT I**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(On Behalf of Plaintiff and the Illinois Subclass)**

38.    Plaintiff incorporates by reference and re-alleges each and every allegation above, as though fully set forth herein.

39.    This Count is brought by Plaintiff and other Subclass members who are from the State of Illinois.

40.    Section 2 of The Illinois Consumer Fraud and Deceptive Business Practices Act

(the "ICFA"), 815 ILCS 505/1, *et seq.* provides in relevant part that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

41.    Plaintiff and the other members of the Illinois Subclass are "consumers" within the meaning of Section 1(e) of the ICFA, because Defendants' business activities involve trade or commerce, are addressed to the market generally, and implicate consumer protection concerns.

42.    Plaintiff and members of the Illinois Subclass are consumers who purchased Aerosol Antiperspirant Products for personal, family, or household use.

43.    Plaintiff and Illinois Subclass members suffered an injury in fact and suffered a pecuniary loss as a result of Defendant's violations of the ICFA.

44.    Defendant's conduct as described herein constitutes a deceptive practice and an unfair practice in violation of Sections 2 of the ICFA. Defendants used or employed deception and misrepresentation in the conduct of trade or commerce by manufacturing, distributing, and selling Aerosol Antiperspirant Products that are contaminated with benzene and thus present a safety risk to consumers and users of Aerosol Antiperspirant Products. Defendant misrepresented and/or engaged in deceptive conduct by stating to Plaintiff and members of the Illinois Subclass that the Aerosol Antiperspirant Products they purchased would contain only the active ingredients stated on the label, and not harmful, carcinogenic impurities such as benzene, and certainly not in the levels publicly disclosed thus far.

45.    Defendant's deception was unfair and material in that it induced Plaintiff and

members of the Illinois Subclass to purchase the Aerosol Antiperspirant Products and incur costs under false pretenses, namely that the Aerosol Antiperspirant Products were fit for human use and not contaminated. Plaintiff and Illinois Subclass members reviewed the labels, advertising, and/or marketing of Defendant's Aerosol Antiperspirant Products, reasonably acted in positive response to those representations and were thereby deceived. Plaintiff would not have purchased Defendant's Aerosol Antiperspirant Products on the same terms but for Defendant's material misrepresentations. Plaintiff and members of the Illinois Subclass who purchased Defendant's Aerosol Antiperspirant Products were overcharged for these products, which by law were worthless. At minimum, Plaintiff and members of the Illinois Subclass paid a considerable price premium for the Aerosol Antiperspirant Products.

46.    Additionally, Defendant knowingly failed to disclose and concealed the contamination of the defective Aerosol Antiperspirant Products with the intent that Plaintiff and members of the Illinois Subclass rely on said concealment, in violation of the ICFA. Defendant's fraudulent statements and omissions were material to Plaintiff and members of the Illinois Subclass. When Plaintiff and members of the Illinois Subclass purchased Aerosol Antiperspirant Products, they reasonably relied on the expectation that Aerosol Antiperspirant Products (i) would not contain dangerously high levels of benzene, and (ii) was generally recognized as safe for human use. Had Defendant disclosed that Aerosol Antiperspirant Products contained dangerously high levels of benzene and was unsafe for human use, Plaintiff and members of the Illinois Subclass would not have purchased Aerosol Antiperspirant Products or would they have paid less for them.

47.    Defendant knowingly concealed, suppressed, and/or omitted the presence of the benzene contamination and safety risk in Aerosol Antiperspirant Products at the time of sale and

at all relevant times thereafter.

48.     Defendant owed a duty to disclose the benzene contamination and its corresponding safety risk to Plaintiff and members of the Illinois Subclass because Defendant possessed superior and exclusive knowledge regarding the benzene contamination and the risks associated with the consumption of benzene.

49.     Defendant knew, or should have known, that the benzene contamination in its Aerosol Antiperspirant Products made them unsafe for human use. As discussed herein, both the FDA and international regulators have imposed more stringent testing requirements for benzene contamination, which if followed would have revealed the presence of benzene.

50.     As a direct and proximate result of Defendant's wrongful conduct in violation of the ICFA, Plaintiff and members of the Illinois Subclass have suffered and continue to suffer ascertainable pecuniary loss in the form of monies paid for defective, worthless Aerosol Antiperspirant Products.

51.     On behalf of himself and other members of the Illinois Subclass, Plaintiff seeks to recover actual or compensatory damages, costs, injunctive relief, attorneys' fees, and other damages to be determined at trial.

## COUNT II
## Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class and Illinois Subclass)

52.     Plaintiff incorporates by reference and re-alleges each and every allegation above, as though fully set forth herein.

53.     As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and wrongfully retained benefits in the form of money paid by the Plaintiff and members of the Class when they purchased the Aerosol

Antiperspirant Products.

54.    In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

55.    As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

56.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

57.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Aerosol Antiperspirant Products to Plaintiff and members of the Class.

58.    Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

59.    The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class.

60.    Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

61.    Finally, Plaintiff and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

**COUNT III**
**<u>Breach of Implied Warranty</u>**
**(On Behalf of Plaintiff and the Nationwide Class and Illinois Subclass)**

62.    Plaintiff incorporates by reference and re-alleges each and every allegation above, as though fully set forth herein.

63.     Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Aerosol Antiperspirant Products. Defendant knew or had reason to know of the specific use for which its Aerosol Antiperspirant Products were purchased.

64.     At the time Defendant marketed and otherwise placed its Aerosol Antiperspirant Products into the stream of commerce, it knew of the particular purpose for which Plaintiff and the Class members purchased the Aerosol Antiperspirant Products—to have a safe and effective antiperspirant, which did not contain any dangerous carcinogens. Defendant also knew that consumers, including Plaintiff and members of the Class, would have no ability or opportunity to determine the ingredients in the Aerosol Antiperspirant Products, but instead would rely on Defendant's representations that the Aerosol Antiperspirant Products were suitable for their particular purpose and free of dangerous carcinogens (*i.e.,* benzene).

65.     At all times, Plaintiff and the Class members used the Aerosol Antiperspirant Products in the manner that was intended for use.

66.     Defendant provided Plaintiff and the Class members with an implied warranty that its Aerosol Antiperspirant Products were merchantable and fit for the ordinary purposes for which they sold and not dangerous or hazardous to the user's health.

67.     Further, as the intended consumers and ultimate users of the Aerosol Antiperspirant Products, Plaintiff and the Class members are intended third-party beneficiaries of any contracts between Defendant and any retailers from whom Plaintiff obtained Aerosol Antiperspirant Products, which contain the implied warranty of merchantability and to be fit for ordinary purposes, safe and not hazardous to one's health. Plaintiff and the Class members, not any retailers, are the parties intended to benefit by any such contract because they are the people using the Aerosol Antiperspirant Products in the manner intended.

68.    At all times relevant, all fifty States and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability and fitness for ordinary purpose: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Ann. Art. § 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

69.    In breach of the implied warranty of merchantability, the Aerosol Antiperspirant Products that Defendant provided to Plaintiff and the Class members are not fit and suitable for their ordinary purpose because, inter alia, they contain dangerous carcinogens with the potential of causing serious injury and/or death. Defendant's Aerosol Antiperspirant Products supplied to Plaintiff and the Class members did not possess the basic degree of fitness for ordinary use due to

the defects described herein. The defects are so basic that they render the Aerosol Antiperspirant Products unfit for their ordinary purposes. As such, they are not merchantable.

70.    As a direct and proximate result of Defendant's breach, Plaintiff and the Class members have suffered, and will continue to suffer, significant damages, loss, and injury in an amount that will be established at trial.

71.    Plaintiff and the Class members are entitled to legal and equitable relief against Defendant, including consequential damages, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT IV
## Breach of Express Warranty
### (On Behalf of Plaintiff and the Nationwide Class and Illinois Subclass)

72.    Plaintiff incorporates by reference and re-alleges each and every allegation above, as though fully set forth herein.

73.    Plaintiff and each Class member formed a contract with Defendant at the time Plaintiff and the other Class members purchased the Defendant's Aerosol Antiperspirant Products. The terms of the contract include the promises and affirmations of fact made by Defendant on its Aerosol Antiperspirant Products packaging and through marketing and advertising, including the promise that benzene is one of the materials "we do not use as ingredients in any of our formulated products."[23] This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract that Defendant entered into with Plaintiff and each Class member.

74.    Defendant expressly warranted that its Aerosol Antiperspirant Products were fit for their ordinary use, *i.e.*, as a safe and FDA-compliant product suitable for human application "that

---

[23] https://us.pg.com/ingredients/.

reduces the production of perspiration (sweat) at that site." It also expressly warranted that its Aerosol Antiperspirant Products were not adulterated or misbranded.

75.    Defendant's Aerosol Antiperspirant Products did not conform to Defendant's express representations and warranties because they were not manufactured in compliance with FDA standards, were not suitable for human application, and were adulterated and misbranded.

76.    At all times relevant all the following States and Territories have codified and adopted the provisions of the Uniform Commercial Code: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313;Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A-2-313; Va. Code § 8.2-313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313; and Wyo. Stat. § 34.1-2-13.

77.    At the time that Defendant marketed and sold its Aerosol Antiperspirant Products,

it recognized the purposes for which the products would be used, and expressly warranted the products were suitable for human application, FDA compliant, and not adulterated or misbranded. These affirmative representations became part of the basis of the bargain in every purchase by Plaintiff and each Class member, including but not limited to the express representation Defendant made that benzene is not an ingredient used in any of its products.

78.    Plaintiff and each Class member are natural persons who are reasonably expected to use, consume, or be affected by the adulterated and/or misbranded Aerosol Antiperspirant Products manufactured and sold by Defendant.

79.    Defendant breached its express warranties with respect to its Aerosol Antiperspirant Products because the products were not suitable for human application, did not comply with FDA standards, and were adulterated and misbranded.

80.    Plaintiff and each Class member would not have purchased the Aerosol Antiperspirant Products had they known the products contained benzene, were not suitable for human application, did not comply with FDA standards, and/or were adulterated and misbranded.

81.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and other Class members have been injured and suffered damages in the amount of the purchase price of their Aerosol Antiperspirant Products, and any consequential damages resulting from the purchases, in that the Aerosol Antiperspirant Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A.    An order certifying this action as a class action, appointing Plaintiff and his

counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.      An order enjoining Defendant from selling the Aerosol Antiperspirant Products;

C.      An order enjoining Defendant from suggesting or implying that the Aerosol Antiperspirant Products are safe and effective for human application;

D.      An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing Aerosol Antiperspirant Products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.      An order requiring Defendant to pay restitution or damages to restore all funds acquired by means of any unlawful, unfair, or fraudulent business act or practice, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendant to disgorge any ill-gotten benefits received from Plaintiff and members of the Class as a result of any wrongful or unlawful act or practice;

H.      An order requiring Defendant to pay appropriate damages for breach of implied warranties;

I.       An order requiring Defendant to pay appropriate damages for breach of express warranties;

J.      An order requiring Defendant to pay all actual and statutory damages permitted

under the counts alleged herein;

K.    An order awarding attorneys' fees and costs to Plaintiff and the Class; and

L.    An order providing for all other relief as may be just and proper.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all causes of action so triable.

Dated: December 20, 2021                Respectfully submitted,

JAMES DETHROW, individually and on behalf of
all others similarly situated.

By: */s/ Paul T. Geske*
One of Plaintiff's Attorneys

Paul T. Geske
Chandne Jawanda
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
pgeske@mcgpc.com
cjawanda@mcgpc.com

*Attorneys for Plaintiff and the putative Class*